# DAVIS *et al. v.* PENN MUTUAL LIFE INSURANCE COMPANY.

No. 15638.   JANUARY 9, 1947.   REHEARING DENIED FEBRUARY 6, 1947.

824

*E. Harold Sheats, W. S. Northcutt, Ralph H. Pharr, Durwood T. Pye,* and *Standish Thompson,* for plaintiffs in error.

*Grover Middlebrooks* and *Alston, Foster, Sibley & Miller,* contra.

CANDLER, Justice. (After stating the foregoing facts.) When this case was first here in *Davis* v. *Penn Mutual Life Ins. Co.,* 198

*Ga.* 550 (32 S. E. 2d, 180, 160 A. L. R. 778), we held that the allegations of the petition as it then stood were sufficient, against general demurrer, to show that the credits sought to be assessed for State and county ad valorem taxes had no situs for such taxation in Fulton County or the State of Georgia. It is now urged that the allegations of an amendment to the petition, which was allowed subsequently to our prior holding, are sufficient to show that the credits have a tax situs in Fulton County, and that for this reason it was error to overrule the general demurrer, renewed to the petition as amended. The defendant in error, however, takes the position that the amendment did not materially change the substance of its petition, but on the contrary only set out in detail the procedure employed in making its loans; and that the petition as finally amended shows that the notes sought to be taxed did not accrue out of or incident to property owned or a business conducted by it or its agent in Georgia. If the amendment last allowed has so completely changed the petition that it now shows that the credits of the plaintiff have a tax situs for State and county purposes in Fulton County, then it was error, of course, to overrule the renewed general demurrer to the petition thus amended; otherwise not. The motion for new trial as amended contains, besides the usual general grounds, nine special grounds, but as we view the writ of error it presents for decision only three questions, namely: (1) Does the amended petition allege a cause of action for the relief sought? (2) Did the court err in directing a verdict for the plaintiff under all the facts and circumstances disclosed by the record? And (3) did the court err in refusing to allow in evidence certain documentary evidence offered by the defendants? We shall deal with these questions in the order stated.

■ This suit was filed on October 22, 1937, and does not involve the amendment adopted in 1937 to art. 7, sec. 2, par. 1 (Code, Ann. Supp., § 2-5001) of the Constitution of 1877, and laws enacted pursuant thereto relating to tax on intangibles; nor does the suit involve art. 7, sec. 1, par. 3 (Code, Ann. Supp., § 2-5403) of the Constitution of 1945. The question here presented must, therefore, be determined under the applicable provisions of the Constitution and laws of this State as they existed prior to June 8, 1937. The constitutional provision of force during the period involved in the instant case is: "All taxation shall be uniform upon the same

class of subjects and ad valorem upon all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." The political jurisdiction of a State does not extend beyond its territorial limits, and therefore it can not lawfully impose a tax upon persons, natural or artificial, or property, residing or situated beyond such limits. A State can not tax where it has jurisdiction over neither the owner nor the property. In such a case the State affords no protection, and there is nothing for which taxation can be the equivalent. *Davis* v. *Penn Mutual Life Ins. Co.,* supra. It is not disputed here that the plaintiff is a non-resident corporation, with its home office in Philadelphia. It is, however, insisted that certain promissory notes owned by the plaintiff are incident to and derived from a loan business conducted by it within the State, and that these items of property are within its taxing jurisdiction. Whether or not such items of property when owned by a non-resident have a tax situs in this State, must necessarily depend upon the facts in each particular case.

It has long been settled by rulings of this court that a promissory note of a citizen of this State, owned by a non-resident and held at his domicile outside of this State, is taxable here, if it accrues out of or is incident to property owned or a business conducted by the non-resident or his agent in Georgia. *Armour Packing Co.* v. *Savannah,* 115 *Ga.* 140 (41 S. E. 237) ; *Armour Packing Co.* v. *Augusta,* 118 *Ga.* 552 (45 S. E. 424, 98 Am. St. R. 128) ; *Suttles* v. *Northwestern Mutual Life Ins. Co.,* 193 *Ga.* 495 (19 S. E. 2d, 396, 21 S. E. 2d, 695, 143 A. L. R. 343) ; *Colgate-Palmolive-Peet Co.* v. *Davis,* 196 *Ga.* 681 (27 S. E. 2d, 326) ; *Northwestern Mutual Life Ins. Co.* v. *Suttles,* 201 *Ga.* 84 (38 S. E. 2d, 786) ; *Parke, Davis & Co.* v. *Atlanta,* 200 *Ga.* 296 (36 S. E. 2d, 773, 163 A. L. R. 976). And it is as equally well settled by the holdings of this court that a promissory note of a citizen of this State, owned by a non-resident and held at his domicile outside of this State, which does not accrue out of or is not incident to property owned or a business conducted by the non-resident, or his agent, in Georgia, has no situs for taxation in this State. *Collins* v. *Miller,* 43 *Ga.* 336; *Williams* v. *Mandell,* 44 *Ga.* 26; *Carhart* v. *Paramore,* 44 *Ga.* 262; *Cary* v. *Edmondson,* 44 *Ga.* 651; *Columbus Mutual Life Ins. Co.* v. *Gullatt,* and *Guardian Life Ins. Co.* v. *Gullatt,* 189 *Ga.* 747 (8 S. E. 2d, 38) ; *Suttles*

v. *Associated Mortgage Companies,* 193 *Ga.* 78 (17 S. E. 2d, 272); *National Mortgage Corp.* v. *Suttles,* 194 *Ga.* 768 (22 S. E. 2d, 386); *Davis* v. *Metropolitan Life Ins. Co.,* 196 *Ga.* 304, 316 (26 S. E. 2d, 618). As was said by Mr. Justice Grice in the *Metropolitan* case: "We must regard the law on this subject as having been established, making it unnecessary to blaze any new trails in this field, or to even again mark out the lines. The aforementioned decisions not only point out the landmarks but they make plain the boundaries. The blazes are fresh and are before our eyes. Our object shall be to apply the law to the undisputed facts of this record." True it is, every case of this general type must depend on its own particular facts, because situs can be determined by facts and these only. The notes in the instant case are taxable or not taxable depending upon whether or not they accrue out of or are incident to property owned or a business conducted by the non-resident owner, or his agent, in this State. In our statement of facts we have set out in full the allegations showing the procedure employed in making the loans involved from the time the borrower first contacted the broker in his effort to secure a loan to the time when it was actually closed and the note and loan deed forwarded to plaintiff lender at its home office. It would serve no useful purpose to again state those several acts incident to negotiating and closing the loans. If these allegations show the broker, or plaintiff's loan supervisor, or the firm of attorneys who closed the loan, or any two or more of them, was agent for plaintiff vested with authority in any manner to conduct for it a loan business in this State, then the petition did not state a cause of action for the relief prayed. *Suttles* v. *Northwestern Mutual Life Ins. Co.,* supra. It was held by this court in *Davis* v. *Metropolitan Life Ins. Co.,* supra, where an application for a loan was made by a borrower through a broker as its agent and closed by a trust company, also an agent for the borrower, and where procedure almost identical to that here employed was followed in making and closing the loan—that neither was a loan agent of the lender, so as to give the credits involved a tax situs in this State. "By using intermediaries as channels of transmission for papers, relying upon their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them also at his instance, the lender does not constitute them his agent to make

the loan, and is not chargeable with the consequences of dealings between them and the borrower, whether those dealings be public or private, known or unknown." *Merck* v. *American Freehold &c. Co.*, 79 *Ga.* 213 (2) (7 S. E. 265). In the *Merck* case, Mr. Chief Justice Bleckley further said: "Implications of agency are easily overstrained, misapplied, or otherwise abused. . . If he holds control of his capital and decides for himself when he will part with it, and on what terms, and has no terms but lawful interest and good security, and satisfies himself that the security is good, he transacts his own business and is not to be judged by the law of agency."

Applying the principles announced in very recent cases from this court, which we have cited, where efforts were made to tax credits and the loans were made under like procedure, we do not think that the broker who accepted the loan application here involved or the attorneys who closed the loan were agents of the plaintiff, conducting for it such a loan business in this State as would give a tax situs to its loans so made. Both the broker and the attorneys who closed the loan were by express contract employed by the borrower as his agents to obtain and close the loan, and no services rendered by them in connection with the loan had the legal effect of changing the status of agency to one between them and the lender.

Therefore we hold that the allegations in the amended petition did not show that the broker or the firm of attorneys who closed the loan were agents of the lender vested with authority to conduct a loan business for it in Georgia, so as to make its credits taxable in this State.

But what of the plaintiff's salaried loan supervisor Graf, and his connection with the loans? The allegations of the amended petition show that his primary duty was to service the plaintiff's loans after they were made, and upon authority of the *Metropolitan* case we hold that "the maintenance of an office and agency in this State for the purpose merely of protecting the security and ultimate liquidation of the indebtedness, the papers themselves being sent into this State only when needed for collection, renewal, or foreclosure, would not be using them in this State as an incident of property owned or of a business conducted in Georgia so as to give taxable situs here." Graf rendered no service to his employer in making

the loans except to receive the application for a loan from the broker, inspect the property offered as security and transmit the application, together with his inspection report to the home office of the lender. With this done his entire connection with the application terminated. Unlike Durant in the *Northwestern* case, supra, he had no authority to solicit loans, and he never did, he had no contact or dealings with the borrower, he took no part in the preparation of papers connected with the loan, did not deal in any way with the attorneys who closed the loan, handled no part of the funds loaned, and no communication from the lender, either with the borrower, the broker, or the attorneys who closed it, passed through his office. He was not present on and had no part in the preparation of the application for the loan or when it was approved by the plaintiff's Finance Committee. He took no part in making title investigations or in the preparation of the loan papers, neither was he present nor did he participate in any way with the closing of the loan. His employer did not rely upon him for any of these services in making its loans, but on the contrary trusted the agents of the borrower for this. We can not bring ourselves to believe that the services rendered by Graf in connection with the plaintiff's loans were sufficient to show that it was conducting a loan business in this State through him as an agent, so as to give a tax situs here for its credits.

We think that the court properly found that the petition as amended stated a cause of action for the relief prayed, and therefore did not err in overruling the general demurrer which was renewed to the petition as amended.

■ "Where there is no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, shall demand a particular verdict, the court may direct the jury to find for the party entitled thereto." Code, § 110-104. The stipulation between the parties and the evidence introduced by the plaintiff showed without dispute that the allegations contained in the petition as amended were true, and as a matter of law they demanded a verdict for the plaintiff. Therefore it was not erroneous for the judge to direct the jury to find for the plaintiff as he did.

■ Complaint is made that the court excluded from evidence a bank book showing a special account maintained by Alston, Alston, Foster & Moise, the firm of attorneys who closed the loan here in-

volved, in a named bank. It is insisted that this evidence would have disclosed that the intangibles of the plaintiff were derived from or used as an incident of property owned or a business conducted by the plaintiff in this State. We find ourselves unable to agree with the defendants in this contention. The undisputed evidence shows that the plaintiff in making the loan in question forwarded to the closing attorneys a check for the amount of the loan, payable jointly to them and the borrower, with instructions to disburse the proceeds so that the loan being made would be a first lien on the property offered as security. The borrower endorsed the check to his agents, the closing attorneys, who deposited the same to their special account, without the knowledge or direction of the lender, and immediately disbursed the funds for purposes of the loan. In these circumstances we are unable to understand how this evidence could have illustrated a taxable situs for the plaintiff's loan in this State. It is sufficient to say that this assignment is without merit.

It follows from what has been said in the three preceding divisions that the court did not err in overruling the general demurrer to the amended petition, and in refusing to grant a new trial.

*Judgment affirmed. Jenkins, Chief Justice, Bell, Atkinson, and Wyatt, Justices, and Price and Townsend, Judges, concur. Duckworth, Presiding Justice, and Head, Justice, disqualified.*