REDWINE, State Revenue Commissioner, *v.* DAN RIVER MILLS INC.

WYATT, J. The State of Georgia made an income-tax assessment for the year 1946 against Dan River Mills Inc. An execution was issued and levied upon "One Royal Typewriter, Serial No. KMM-3041285," as the property of the defendant in fi. fa. An affidavit of illegality was filed, in which it was alleged: That the fi. fa. was issued and was proceeding illegally because the defendant in fi. fa., during the year 1946, did not have or receive any income from property owned or from business carried on in the State of Georgia, because during the year 1946, the defendant in fi fa. was not "'doing business' in Georgia within the meaning of that term as used in the income-tax statutes of Georgia. That at all times during the calendar year 1946, Dan River Mills Incorporated was a corporation chartered and organized under the laws of the State of Virginia, having its principal office and place of business in the State of Virginia. Defendant is, and was during 1946, a manufacturer of textiles, and all of its manufacturing plants are, and were during 1946, located in the State of Virginia. During the calendar year 1946, defendant maintained a sales office in New York, N. Y., which office was headed by a Vice-President who is defendant's General Sales Manager. With the exception of an Assistant Treasurer at the New York office, all other officers of defendant were residents of

the State of Virginia, and all of its directors likewise were residents of Virginia. Defendant did not during the year 1946 have any manufacturing plant, warehouse, storage room or stock of goods within the State of Georgia. During the calendar year 1946, defendant had an office in Atlanta, Georgia, for the use and convenience of Mr. Garnett C. Robey, an employee of defendant. Mr. Robey was in charge of this Georgia office. Working under Mr. Robey was one other employee and a stenographer-secretary. All these employees at said office were paid salaries. Defendant paid the rent and incidental expenses of this Atlanta office, and maintained a small bank account in Atlanta in the name of Garnett C. Robey and Leslie H. Browder, Assistant-Treasurer of the corporation, Mr. Browder's office being in New York. Checks drawn against this account were signed by either Mr. Robey or Mr. Browder. A balance of approximately $1500 was maintained in this account solely for the purpose of paying the local expenses of the Georgia office, such as traveling expenses, rent, stationery, stamps, telephone and telegraph expenses, and other similar items. Salaries of said employees were not paid from this account. The account was replenished with funds from the principal office of the company in Virginia. The territory covered by Mr. Robey and his assistant from the Atlanta office during 1946 consisted of parts of Kentucky, Virginia, Tennessee, and Louisiana; and all of North Carolina, South Carolina, Florida, Georgia, Alabama, and Mississippi. All sales made by defendant to purchasers residing in this territory were credited on the company records at its home office in Virginia to the Atlanta office, regardless of how sales originated, except sales of yarn, which were not credited to the Atlanta office, but to the company's Yarn Sales Division, which is operated from Danville, Virginia, as a separate division. The only functions of Mr. Robey and the other employee from the Atlanta office were to keep in touch with customers of defendant in their territory; to receive and transmit offers to purchase goods from defendant, and to maintain good will. No representative from the Atlanta office made any contract of sale, and they were not authorized to do so. All orders taken or received by employees at the Atlanta office expressly provided that the order was subject to the written acceptance of defendant at its home office in Virginia. Only the principal office of the company in the State of Virginia had authority to accept and confirm orders thus received. Some orders or offers to purchase received through the Atlanta office were rejected by the principal office in Virginia, some of the most usual reasons for the rejection being that the particular types of goods were not available or the credit risk of the customer was unsatisfactory. When an order was accepted at the principal office of defendant in Virginia, the function of the Atlanta office and all employees thereof was simply to keep in touch with the customer and to keep up-to-date information with respect to deliveries and unfilled portions of the orders. No goods were kept in Georgia in warehouses or otherwise. No person employed at the Georgia office had any authority to and did not in fact make collections, arrange credit terms, confirm or accept orders, adjust complaints, nor make final agreements of any kind with customers or others. No accounts were kept at the Georgia office of defendant, and no billing was done therefrom. No

collections were made by said office, but the entire function of defendant's Georgia office in 1946 was limited to the solicitation of orders or offers to purchase goods from defendant, which offers were transmitted through the New York office to defendant's Virginia office for acceptance or rejection. All orders received at the Virginia office of defendant from its Atlanta office or from the territory serviced by it, if accepted, were filled by the shipment f.o.b. of goods from the mill or warehouses of defendant in Virginia, shipments being made direct to the customer or purchaser. The goods were invoiced to the purchaser by the defendant's Virginia office and all payments were made to said Virginia office. The only property which the company owned during the year 1946 in the State of Georgia consisted of a small amount of office furniture and supplies, on which it paid ad valorem property taxes to the State of Georgia, Fulton County, and the City of Atlanta. No order was accepted by defendant in Georgia during the year 1946, and no sale was made by it in Georgia during 1946. No shipment of goods was made by defendant from any place in Georgia during 1946, and no collections or adjustments of accounts was made in Georgia during the year 1946."
Certain constitutional questions were raised, not necessary here to be stated. A general demurrer to the affidavit of illegality was filed and overruled, to which ruling exceptions pendente lite were duly preserved. Upon the trial of the case, all matters of fact alleged in the affidavit of illegality were established by uncontradicted evidence. The trial court directed a verdict in favor of the taxpayer. A motion for new trial was duly filed and overruled. The exception is to that judgment, and error is assigned upon the exceptions pendente lite. *Held*:
1. This court as recently as May 8, 1950, decided *Suttles* v. *Owens-Illinois Glass Co.*, 206 *Ga.* 849 (59 S. E. 2d, 392). The question then under consideration was the right of the State of Georgia to tax accounts receivable under a state of facts almost identical with the facts in the instant case. The decisions cited and relied upon in that case by both sides were, in the main, the same as the ones cited and relied upon in the instant case. They are there fully dealt with, and it would serve no useful purpose to discuss them here again. We know of no reason, and none has been pointed out, why the principles of law as laid down in the *Suttles* case, supra, should not be applied to the collection of income taxes under the state of facts disclosed by the case now under consideration. We therefore hold that the rules of law applied in the *Suttles* case supra, must be applied in the instant case. It follows, there was no error in overruling the demurrer to the affidavit of illegality or in directing a verdict in favor of the taxpayer. It becomes unnecessary, therefore, to decide the constitutional questions raised by the affidavit of illegality.

*Judgment affirmed. All the Justices concur, except Almand, J., who is disqualified.*

No. 17225. October 9, 1950. Rehearing denied November 15, 1950.

*Eugene Cook, Attorney-General, M. H. Blackshear, Lamar W.*

*Sizemore* and *Martin H. Peabody, Assistant Attorneys-General,* for·plaintiff.

*W. K. Meadow, Spalding, Sibley, Troutman & Kelley,* and *Frank Talbott Jr.,* for defendant.

*MacDougald, Troutman, Sams & Schroder, Alston, Foster, Sibley & Miller, James E. Thomas, Henry J. Miller, Smith, Kilpatrick, Cody, Rogers & McClatchey, Bird & Howell, Sutherland, Tuttle & Brennan, Moise, Post & Gardner, Crenshaw, Hansell, Ware & Brandon,* and *John H. Boman Jr.,* for persons at interest, not parties.