38454.  OXFORD, Commissioner v. TOM HUSTON PEANUT COMPANY.

DECIDED OCTOBER 13, 1960—REHEARING DENIED NOVEMBER 21, 1960.

716

"  .   .   .

718

720

724

725

*Eugene Cook, Attorney-General, Ben F. Johnson, Deputy Assistant Attorney-General,* for plaintiff in error.

*Powell, Goldstein, Frazer & Murphy, B. D. Murphy, Hatcher, Smith, Stubbs & Rothschild,* contra.

CARLISLE, Judge. ■ The material provisions of *Code* § 92-3113 read as follows: "The tax imposed by this law shall apply to the entire net income, as herein defined, received by every corporation, foreign or domestic, owning property or doing business in this State. Every such corporation shall be deemed to be doing business within this State if it engages within this State in any activities or transactions for the purpose of financial profit or gain, whether or not such corporation qualifies to do business in this State, and whether or not it maintains an office or place of doing business within this State, and whether or not any such activity or transaction is connected with interstate or foreign commerce.

"If the entire business income of the corporation is derived from property owned or business done in this State, the tax shall

be imposed on the entire business income, but if the business income of the corporation is derived in part from property owned or business done in the State and in part from property owned or business done without the State, the tax shall be imposed only on that portion of the business income which is reasonably attributable to the property owned and business done within the State, to be determined as follows: . . ."

The remaining paragraphs of this Code section provide for the methods of apportioning corporate income, the various methods to be used depending on the sources of the income and the type of business done by the corporation. One of these methods thus provided is the so-called "three-factor ratio," which is to be used by corporations engaged in the manufacture, production or sale of tangible personal property. It is unnecessary to set forth or to consider these provisions for the purposes of this opinion.

With respect to the first issue in this case, that is, the apportionment issue, the solution turns solely upon the question of whether the plaintiff is doing business outside of Georgia. Under the plain terms of the Code section quoted above, if the plaintiff is not doing business outside of Georgia, that is, if all of its business activity is conducted within this State, then it is not entitled to apportion its income under the three-factor ratio or on any other basis. The solution of this question, in turn, depends on whether the eleven so-called district sales managers were, under the facts stipulated, employees of the plaintiff or whether they were independent contractors conducting a business of their own and wholly free from the control of the plaintiff. This is so because the only activity of the plaintiff outside this State, as shown by the stipulation of facts, aside from the activities of these district sales managers, is the delivery of some of its merchandise in its own trucks. This activity, standing alone, would be insufficient to authorize a finding that the plaintiff was engaged in business outside the State of Georgia. The mere delivery of merchandise, even on a delivered at destination basis, as in this case, is insufficient to charge a taxpayer with doing business within the state where such deliveries are made, so as to subject him to the jurisdiction and the taxing laws of such state. Miller Bros. Co. v. Maryland, 347 U. S. 340 (74

S. Ct. 535, 98 L. Ed. 744). If the plaintiff is not doing business in other States so as to be subject to their jurisdiction for taxing purposes, it is not entitled to apportion its income in Georgia.

With respect to the issue of whether the district sales managers are servants and agents of the plaintiff acting solely for it and are conducting its business, or whether these so-called district sales managers are independent contractors conducting business on their own account, the facts stipulated show: These district sales managers, while charged with the duty of promoting the sale of the plaintiff's products and the products of the affiliated manufacturers within their prescribed territory are, nevertheless, free to "sell and promote the sale of products of *other manufacturers*, and do such other things as the 'district sales managers' may see fit." They are also free to employ their own initiative, independent judgment, methods and procedures, hire such assistants and clerical personnel and to discharge such assistants and clerical personnel as and when they set fit. The only requirements imposed upon them by the plaintiff are that they produce a satisfactory sales volume within their territory and maintain a good reputation. These latter requirements do not authorize a finding that these district sales managers are employees of the plaintiff. "Under the Georgia statute and decisions, the test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Zurich General Accident & Liability Ins. Co. v. Lee,* 36 Ga. App. 248 (136 S. E. 173) ; *Quinan v. Standard Fuel Supply Co.,* 25 Ga. App. 47 (102 S. E. 543) ; *Mount v. Southern Ry. Co.,* 42 Ga. App. 546, 550 (156 S. E. 701) ; *Home Accident Ins. Co. v. Daniels,* 42 Ga. App. 648 (2) (157 S. E. 245) ; *Irving v. Home Accident Ins. Co.,* 36 Ga. App. 551 (137 S. E. 105)." *Yearwood v. Peabody,* 45 Ga. App. 451 (2) (164 S. E. 901). To the same effect see *Glens Falls Indem. Co. v. Clark,* 75 Ga. App. 453, 459 (43 S. E. 2d 752), and *Alexander-Bland*

*Lumber Co. v. Jenkins,* 87 Ga. App. 678, 682 (75 S. E. 2d 355). Applying this simple test, the district sales managers in this case are clearly independent contractors conducting a business on their own account and not subject to the control of the plaintiff as to the time, manner and method of doing the work, but are merely required to produce certain required results.

This case on its facts is not distinguishable from the cases of *Montag Bros. v. State Revenue Commission,* 50 Ga. App. 660 (179 S. E. 563) (affirmed without opinion, 182 Ga. 568); *Suttles v. Owens-Illinois Glass Co.,* 206 Ga. 849 (59 S. E. 2d 392); *Redwine v. Dan River Mills,* 207 Ga. 381 (61 S. E. 2d 771); and *Redwine v. United States Tobacco Co.,* 209 Ga. 725 (75 S. E. 2d 556). The rulings in those cases, based on facts substantially like those of this case, require the ruling here made.

The fact that the plaintiff carried these district sales managers on its payroll as employees for the purposes of social security, old age benefits, and for income tax withholding purposes, does not, even when considered in connection with other facts stipulated, authorize the conclusion that they are not independent contractors. *Young v. Bureau of Unemployment Compensation,* 63 Ga. App. 130, 137 (10 S. E. 2d 412); *McNeel, Inc. v. Redwine,* 90 Ga. App. 345, 347 (83 S. E. 2d 33); *Moore v. Williams,* 95 Ga. App. 309, 310 (97 S. E. 2d 718).

It follows with respect to the first issue that since the plaintiff was not engaged in any substantial activity on its own behalf outside of this State, it was not entitled to apportion its income under the provisions of *Code* § 92-3113. Since this ruling applies to the plaintiff's entire business activity, it is unecessary to determine the nature of the plaintiff's business and the income therefrom with respect to the commissions received by it from the sales of affiliated products.

■ The solution of the question presented by the Federal tax deduction issue depends upon the interpretation and construction to be placed upon the act of the General Assembly approved February 27, 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 274 et seq.). This act amended *Code* § 92-3109 (c). The Income Tax Act of 1931 from which the present law stems made no provision for the deduction for the Federal income taxes. Ga. L. 1931, Ex.

Sess., pp. 24, 32, § 11 (c). It is interesting to note in passing, however, that this act allowed to be deducted those taxes *paid* or *accrued* within the taxable year. It contained the further provision in § 2 (m) (Ga. L. 1931, Ex. Sess., pp. 24, 25) that for the purpose of deductions under the act, the word "Paid" meant "Paid or accrued," or "Paid or incurred," and that the words "Paid or accrued," "Paid or incurred," and "Incurred" should be construed according to the method of accounting upon the basis of which the net income was to be computed under the act, and that the word "Received" for the purpose of computation of net income under the act meant "Received or accrued," and that the words "Received or accrued" should be construed according to the method of accounting upon the basis of which the net income of the taxpayer was to be computed under the act.

The first material amendment to this section was enacted by the General Assembly at its extra session in 1937. By section 7 of the act approved Dec. 29, 1937 (Ga. L. 1937, Ex. Sess., pp. 150, 155) subdivision (c) of § 92-3109 was repealed and superseded. The new section thus enacted again listed as an allowable deduction from gross income taxes *paid* or *accrued* within the taxable year and allowed for the first time a deduction of Federal income taxes. This section carried the following proviso: "Provided, however, that the taxpayer may only deduct from gross income the amount of Federal net income taxes shown to be *due* and *actually paid during the immediate preceding taxable year on the return filed by said taxpayer in such preceding taxable year.*" (Italics supplied). This proviso prevented a taxpayer from taking credit for such payments on his Federal tax liability as might arise by reasons of deficiency assessments on prior tax years and the like, and it indicated an intention on the part of the General Assembly to limit within narrow confines the taxpayer's right of deducting Federal income taxes on its State income tax return to only such taxes as were *due* and paid on a return filed by such taxpayer in the taxable year.

This section was again amended in an act approved January 26, 1950 (Ga. L. 1950, p. 16) and in an act approved Feb. 15, 1952 (Ga. L. 1952, pp. 405, 427 (10)). Neither of these amendments was material to the question now before the court. However,

at the 1953 January-February session of the General Assembly, the legislature deemed it expedient to make clear its intention with respect to the deduction of Federal income taxes, and in an act approved Feb. 27, 1953 (Ga. L. 1953, Jan.-Feb. Sess., pp. 274-279), subsection (c) of § 92-3109 was extensively amended and re-enacted. In substance, it provided a deduction from gross income for taxes "Paid or accrued within the taxable year." With respect to this subject, section 1, par. (3) of this act provides: "Federal income taxes shall be deducted *only in the year in which paid* regardless of the method of accounting used by the taxpayer in keeping his books and records." And, "In the event of recovery or refund of Federal income taxes, actual or constructive, such refund shall be included in gross income of the taxpayer *in the taxable period in which received,* regardless of the method of accounting used by the taxpayer in keeping his books and records." (Italics supplied). Elsewhere in this act in Section I (6), it was declared that, "In the case of the first taxable year ending on or after February 15, 1952, a taxpayer reporting on the cash receipts and disbursements basis may deduct Federal income taxes *paid* within such year. For said taxable year a taxpayer reporting on the accrual basis may deduct Federal income taxes *paid* within such year." (Italics supplied). In dealing with the subject of a taxpayer on an accrual basis who had, prior to the enactment of that act, filed a tax return with the State covering a taxable period in which he might have deducted Federal income tax, but in which such taxpayer had failed to deduct Federal income tax, the act permitted such taxpayer to file an amended return for said period "in order to deduct Federal income taxes *actually paid* during said period."

In Paragraph (8) of Section I of this act, individual taxpayers were permitted to report their Federal income tax deduction on a cash or accrual basis only to the extent that such taxes, if reported on accrual basis, were *actually paid* to the Federal Government on or before the due date. This section did not apply to corporations.

As may be seen from the above, the 1953 act made it clear that in the case of corporations it was the intent of the legis-

lature that they were to be permitted to deduct Federal income taxes *actually paid* during the taxable year covered by their return. The act contains no restriction with respect to income taxes paid on prior years as a result of deficiency assessments and the like, and it notably contained no restriction that such taxes must be *actually due* when paid, as contained in the 1937 act. Under these circumstances, the construction is demanded that under the 1953 act it was the intent of the General Assembly that a taxpayer could deduct Federal income taxes actually paid in the taxable year without regard to whether such taxes were due when paid and without regard to whether they were paid on prior years, the current year, or on future years. It likewise follows that the taxpayer in this case properly deducted the Federal income taxes actually paid by it and accepted by the Federal government, and that the Commissioner erred in overruling the taxpayer's protest to the additional assessment, and the superior court did not err in reversing that ruling.

*Judgment affirmed in part and reversed in part. Townsend and Frankum, JJ., concur. Gardner, P. J., not participating.*